IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA EX REL. KEN ELDER,<br><br>    Plaintiff,<br><br>    v.<br><br>J.P. MORGAN CHASE BANK, N.A.,<br><br>    Defendant.<br><br>&<br><br>STATE OF CALIFORNIA EX REL. KEN ELDER,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. BANK N.A.,<br><br>    Defendant. | Case Nos.  21-cv-00419-CRB<br><br>               21-cv-00551-CRB<br><br>**ORDER GRANTING MOTIONS TO REMAND** |

      In two related cases, Plaintiff-Relator Kenneth Elder alleges that the Defendant banks illegally reported the value owing on numerous uncashed cashier's checks purchased in California as subject to escheatment in Ohio.  Relator alleges that these sums should instead have been escheated to California.  Relator brought claims in state court under California's False Claims Act ("FCA"), Cal. Gov. Code § 12650 et seq.  Defendants removed the cases to the Northern District of California.  Relator now moves to remand the cases to state court.

      The Court finds these motions suitable for resolution without oral argument and therefore vacated the hearings previously set for April 1, 2021.  The Court grants the motions.  As explained below, the Court does not have subject matter jurisdiction over these actions because Defendants

raise federal law only as a defense to Relator's claims. Extending federal jurisdiction over these claims would also disrupt the balance of federal and state judicial responsibilities intended by Congress.

I.  BACKGROUND

   A.  Escheatment and Federal Priority Rules

States have the sovereign power to escheat abandoned property. Delaware v. New York, 507 U.S. 490, 502 (1993). However, a state's power to escheat is generally limited to property located in that state. Texas v. New Jersey, 379 U.S. 674, 677 (1965). When states seek to escheat intangible property, such as money owing on a loan or instrument, the property-holder is in danger of being subject to conflicting escheatment obligations from different states. W. U. Tel. Co. v. Com. of Pa., by Gottlieb, 368 U.S. 71, 75 (1961). To protect property-holders, the W. U. Tel. Court held that property-holders have a due process right not to be subject to conflicting escheatment obligations. Id. Four years later, in a case heard under the Supreme Court's original jurisdiction, the Court announced priority rules dictating which state has the power to escheat what intangible property. Texas, 379 U.S. at 677. Using the terms "creditor" and "debtor" to refer to the party owed and the party holding unclaimed funds, the Court ruled that the state of the creditor's last known address, as shown by the debtor's books and records, has the power to escheat the property. Id. at 681–82. When there is no record of the creditor's address, or when the last known address is in a state which does not provide for the escheatment of the property, the property is subject to escheatment by the state of the debtor's corporate domicile. Id. at 682.

In 1974, Congress enacted the Disposition of Abandoned Money Orders and Traveler's Checks Act ("Federal Disposition Act" or "FDA"). 12 U.S.C. § 2503. The FDA is a statutory exception to the Supreme Court's priority rules; it governs money owing on money orders, traveler's checks and "other similar written instrument[s] . . . on which a banking or financial organization or a business association is directly liable." 12 U.S.C. § 2503. Money owing on instruments falling under the FDA escheats to the state in which the instrument was purchased. Id. § 2503(1). If the debtor's books and records do not show the state in which the instrument was

2

purchased, or if the state of purchase does not provide for the escheatment of the property owed, the money owing is escheatable by the state in which the debtor has its principal place of business. Id. §§ 2503(2)–(3).

California's Unclaimed Property Law ("UPL") regulates the escheatment of abandoned property to the State of California. Cal. Civ. Proc. Code § 1500 et seq. The UPL codifies the federal priority rules in state law. UPL section 1510 implements the Supreme Court's priority rules, allowing escheatment of intangible property when "the last known address . . . of the apparent owner is in this state." See Legislative Committee Comment, 1968 ("Section 1510 describe[s] types of abandoned intangible property that this state may claim under the rules stated in Texas v. New Jersey"). Likewise, section 1511 implements the FDA, for "any sum payable on a money order, travelers check, or other similar written instrument . . . on which a business association is directly liable." See Law Revision Commission Comments ("Section 1511 adopts the rules provided in federal legislation which determines which state is entitled to escheat sums payable on money orders, travelers checks, and similar written instruments"). However, while the FDA leaves the term "other similar written instrument" undefined, the UPL offers a definition of "other written instrument"—a similar term—that includes, "by way of illustration but not of limitation, any draft, cashier's check, teller's check, or certified check." UPL § 1513(a)(4) (emphasis added).

### B.    Relator's Allegations

Relator alleges that Defendants have failed to escheat tens of millions of dollars owing on unclaimed cashier's checks to the State of California. Chase Bank Second Amended Complaint ("CB-SAC") (21-cv-419 dkt. 1-1) ¶ 1; U.S. Bank Second Amended Complaint ("USB-SAC") (21-cv-551 dkt 1-2) at 28 ¶ 1. Defendants have represented to state authorities that these unclaimed cashier's checks, purchased at bank branches in California, are subject to escheatment in Ohio. CB-SAC ¶ 33; USB-SAC ¶ 28. Defendants allegedly take the position that they do not have a record of the addresses of the payees on the cashier's checks they issue, so the checks escheat to Ohio—the banks' state of corporate domicile. CB-SAC ¶ 45; USB-SAC ¶ 37. Relator alleges that this position violates the UPL because the UPL requires cashier's checks purchased in California

3

to escheat to California. CB-SAC ¶ 2; USB-SAC ¶ 2. Relator's reading of the statute understands the UPL's definition of "other written instrument" in section 1513(a)(4) to control the meaning of "other similar written instrument" as used in section 1511. CB-SAC ¶ 18; USB-SAC ¶ 14.

Relator further alleges that many cashier's checks escheated to Ohio were made out to California institutions and government bodies. CB-SAC ¶ 38; USB-SAC ¶ 32. For example, Chase Bank has reported as subject to escheatment in Ohio checks made out to the State Bar of California, the State of California Franchise Tax Board, the City of Chico California, Girl Scouts San Diego, the San Francisco Opera Orchestra, and other similar payees with clear connections to California. CB-SAC ¶¶ 39–42. Similarly, U.S. Bank has reported as subject to escheatment in Ohio checks made out to the Los Angeles Superior Court, the California Association of Realtors, California Police Youth Charities, and other similar payees. USB-SAC ¶¶ 33–36. Relator further claims that, for some subset of the cashier's checks, Defendants know the address of the payee because the check's purchaser is also the payee. CB-SAC ¶ 47; USB-SAC ¶ 39. Relator claims to have identified individuals who resided in California, purchased a cashier's check made out to themselves at Chase Bank branches in California, and later had the amount owing on that check escheated to Ohio. CB-SAC ¶ 44.

Relator notes that escheatment to Ohio benefits Defendants because Ohio's escheatment law is much more favorable for property-holders than California's escheatment law. CB-SAC ¶ 30; USB-SAC ¶ 26. Ohio requires escheatment after five years, while California requires escheatment after three years. Id. Ohio allows property holders to satisfy their payment obligations by paying only 10% of the aggregate funds they report owing while California requires escheatment of the full amount owed. Id. Ohio also exempts business-to-business transactions from escheatment. Id.

### C. Procedural History

Relator filed these cases in California Superior Court, San Francisco County, alleging causes of action under California's FCA only. CB-SAC ¶ 5; USB-SAC ¶ 5. California's FCA allows private citizens to bring actions as relators to recover sums owed to the State of California. FCA § 12652(c)(1). Like all FCA relator cases in California, Relator's complaints were filed in

4

camera and automatically sealed pending the Attorney General's decision over whether to intervene. Id. § 12652(c)(2). The Attorney General ultimately declined to intervene in either case. CB Pleadings (21-cv-419 dkt. 1-3) at 134; USB Pleadings (21-cv-551 dkt. 1-3) at 71. Following the Attorney General's decision, Relator amended the complaints to remove any reference to the federal priority rules. CB Nunn Decl. (21-cv-419 dkt. 32-1) Ex. A ¶ 2;  USB Pleadings at 148; CB Reply (21-cv-419 dkt 43) at 11. Relator declared that the purpose of this amendment was to "clarify that Relator's claims . . . are based specifically on the provisions of the California Unclaimed Property Law." CB Nunn Decl. Ex. A ¶ 2; USB Pleadings at 148.

After the complaints were unsealed and served, Defendants removed the cases to the Northern District of California, asserting federal question jurisdiction. CB Notice of Removal (21-cv-419 dkt. 1); USB Notice of Removal (21-cv-551 dkt. 1). Relator later moved to assign the cases to the judge with the lowest-numbered case as related cases under Civil Local Rule 3-12. Motion to Reassign (21-cv-551 dkt. 24). U.S. Bank did not oppose, and the Court granted the motion on March 2, 2021. Order Relating Cases (21-cv-551 dkt. 28).

Relator now moves to remand both cases to state court. CB Motion to Remand (21-cv-419 dkt. 18); USB Motion to Remand (21-cv-551 dkt. 14).

## II.     LEGAL STANDARD

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). The defendant "has the burden to establish that removal is proper." Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008).

A party may file an action in federal court if its claims "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case can "aris[e] under" federal law in two ways. First, "a case arises under federal law when federal law creates the cause of action asserted." Gunn v. Minton, 568 U.S. 251, 257 (2013). Second, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id. at 258 (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545

5

U.S. 308, 313–14 (2005)). The latter form of "arising under" jurisdiction recognizes that "in certain cases federal-question jurisdiction will lie over state law claims that implicate significant federal interests." Grable, 545 U.S. at 312.

The Supreme Court has since noted that Grable and cases like it are exceptional, and that only a "special and small category" of state law claims give rise to federal-question jurisdiction. Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699 (2006). Furthermore, the plaintiff remains the master of the claim, and the "well-pleaded complaint rule" provides that a federal question is only necessarily raised under the first Grable factor when the federal question is presented on the face of the plaintiff's properly pleaded complaint. See Caterpillar Inc., 482 U.S. at 392. Consequently, "arising under" jurisdiction cannot be established "on the basis of a federal defense, including the defense of pre-emption." Id. at 393. This is so "even if the defense is anticipated in the complaint, and even if both parties concede that the federal defense is the only question truly at issue." Id.

However, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." Rivet v. Regions Bank of La, 522 U.S. 470, 475 (1998). Otherwise, a plaintiff could abuse the well-pleaded complaint rule to defeat federal jurisdiction "simply by leaving out material facts." Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1473 (9th Cir. 1984) (overruled on other grounds).

### III. DISCUSSION

While all four Grable factors must be present to establish federal jurisdiction, an analysis of the first and the fourth factor is sufficient to resolve these motions. The complaint does not "necessarily raise" federal questions, and extending a federal forum to this kind of action would disturb the "congressionally approved balance of federal and state judicial responsibilities." See Grable, 545 U.S. at 314.

#### A. Necessarily Raised

##### 1. The Well-Pleaded Complaint Rule

Regarding the first Grable factor, Relator argues that no federal question is "necessarily raised" under the well-pleaded complaint rule because the face of the complaint does not present

any federal questions. CB Motion to Remand at 1; USB Motion to Remand at 1. Relator's complaints allege that Defendants have failed to comply with California's UPL. CB-SAC ¶ 1; USB-SAC ¶ 1. Relator brings actions under California's FCA, premised on Defendant's alleged noncompliance with the UPL. CB-SAC ¶ 5; USB-SAC ¶ 5. Relator argues that these allegations are grounded in state law, and that federal law will only come into play if Defendants assert a preemption defense. CB Motion to Remand at 1; USB Motion to Remand at 1.

Defendants counter that the federal priority rules are "necessary federal questions" that Relator has improperly amended out of the operative complaints. USB Opp'n at 10; CB Opp'n at 16–17. Defendants point to Relator's claim under FCA section 12651(a)(7) that Defendants "knowingly and improperly avoid[ed] an obligation to pay or transmit money," and argue that the question of whether Defendants owed an "obligation" to escheat necessarily raises the question of California's escheat priority under the federal rules. CB Opp'n at 17; USB Opp'n at 6. Relator's failure to plead anything about the federal rules renders the complaint not well-pleaded, Defendants contend. CB Opp'n at 17; USB Opp'n at 9.

Defendants' argument is unconvincing, and its logic has already been rejected by federal courts across the country. In Yee v. ClubCorp Holdings, Inc., the State of California filed suit under both the UPL and the FCA to escheat unclaimed deposits owed to members of golf clubs and country clubs. No. C 19-03953-WHA, No. C 19-03972-WHA, 2019 WL 4866370, at *1–2 (N.D. Cal. Oct. 3, 2019). The owner of the clubs removed to federal court, arguing that the plaintiff must plead and prove that California had "jurisdiction" to escheat under the federal priority rules, and that this requirement injected a necessary federal element into the action. Id. at 3. The court in Yee rejected this argument, holding that the federal priority rules did not "create or require some additional step in pleading." Id. The court further concluded that any conflict between the UPL and the federal priority rules would be a defense, and a federal defense is an insufficient basis for federal jurisdiction. Id. at 4. In a similar case involving the same defendant in the Western District of Texas, the court came to the same result. Texas v. ClubCorp Holdings, Inc., No. 1:19-CV-00171-LY, 2019 WL 5704436, at *4 (W.D. Tex. Nov. 5, 2019). The court held that the plaintiff could properly plead its claims seeking to escheat deposits under state law, and

issues of priority would be a "federal defense." Id. at 5. A case from Delaware, Del. ex rel. French v. Card Compliant, LLC, reached the same conclusion. No. 14-688-GMS, 2014 WL 12769809 (D. Del. Dec. 10, 2014). There, a plaintiff-relator brought a Delaware FCA claim, alleging that certain businesses had failed to escheat the value owing on unredeemed gift cards to the State of Delaware. Id. at 1. The court granted the motion to remand, holding that plaintiffs' claims did not necessarily implicate federal law, and "[t]o the extent that the Defendants believe Delaware law is in conflict with federal law, they can assert a federal preemption defense." Id. at 1–2.

These district court decisions find significant support in the Supreme Court case, Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1 (1983). In Franchise Tax Bd., the State of California attempted to collect taxes from a trust administering an "employee welfare benefit plan" within the meaning of the Employment Retirement Income Security Act of 1974 ("ERISA"). Id. at 4–5. When the trust failed to comply with state tax levies, California brought suit. Id. at 5. The trust argued that ERISA pre-empted state law and the trustees lacked power to honor the levies under ERISA. Id. at 6. The Court ultimately ruled that the federal courts did not have jurisdiction to resolve the dispute because federal law would become relevant only as a defense to the plaintiff's claims. Id. at 13. The Court explained that federal law is not necessarily raised by a federal defense because, "a finding upon evidence that the [state] law has been obeyed may compose the controversy altogether." Id. at 12 (quoting Gully v. First Nat Bank, 299 U.S. 109, 116 (1936)). The Court emphasized that a federal defense is insufficient even when federal law "sets bounds for the operation of state authority." Id. at 11. Courts are to consistently follow this rule even when it "produce[s] awkward results, especially in cases in which neither the obligation created by state law nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal preemption defense." Id. at 12. As in Franchise Tax Bd., federal law is relevant to Relator's claims "only insofar as it sets bounds for the operation of state authority." See id. at 11. Consequently, the federal question is not necessarily raised.

Furthermore, this case does not even present one of the "awkward results" contemplated by

Franchise Tax Bd. See id. at 12. This case involves significant legal and factual questions apart from a federal preemption defense. Relator claims that Defendants have failed to escheat cashier's checks to the State of California even when the check's payee is also the purchaser and Defendants' records show the payee/purchaser to reside in California. CB-SAC ¶ 47; USB-SAC ¶ 39. For this subset of checks, no federal preemption defense is available.

In addition, California's UPL leaves room for Defendants to argue that "[state] law has been obeyed." See Franchise Tax Bd., 463 U.S. at 12. UPL section 1511(a) requires that "[a]ny sum payable on a money order, travelers check, or other similar written instrument . . . on which a business association is directly liable" escheat to California if the instrument was purchased in California. (emphasis added). Section 1513(a)(4) then defines "other written instrument" and enumerates "cashier's check[s]" under the definition. But there is room for Defendants to argue that "other similar written instrument," as used in section 1511 (emphasis added), encompasses only the subset of "other written instrument[s]" that are similar to money orders and travelers checks, and that cashier's checks are excluded. See USB Opp'n at 10 (disputing whether cashier's checks are "similar" to money orders and traveler's checks). That Defendants may viably argue in this manner that they have complied with the UPL further underscores that the federal questions presented are not "necessarily raised." See Grable, 545 U.S. at 314.

### 2. Defendants' French Argument

Defendants argue that the Court should distinguish the district court cases discussed above because some of the property in dispute in this case has already been escheated to a different state. CB Opp'n at 14; USB Opp'n at 8. Defendants read French for the rule that a federal question is necessarily raised only when states present "competing claims to abandoned property." Id. Defendants argue that this case presents such "competing claims" because Ohio has already escheated some of the property which Relator now seeks to recover for California. Id. But a careful examination of the French decision does not support Defendant's reading. In the relevant paragraph of the decision, the court first concludes that "the power to escheat stems from state sovereignty" and therefore "the plaintiffs' claims themselves are creatures of state law." French, 2014 WL 12769809, at *1. The court then contrasts the plaintiffs' "claims" with situations where

"states present competing claims to abandoned property . . . as illustrated by the Texas v. New Jersey cases." Id. In context, the court was not writing generally about situations where states have competing interests in property. Rather, the court was writing narrowly about the "claims" the plaintiff raised in the complaint. See id. When a state makes claims in a complaint to assert its rights under the federal priority rules, as illustrated by Texas v. New Jersey, those claims may be based on federal law. See Franchise Tax Bd., 463 U.S. at 8–9 ("A suit arises under the law that creates the cause of action"). However, where a state or a relator simply attempts to recover property from a private party under state escheatment laws, federal law is only a defense to liability. See French, 2014 WL 12769809, at *1; see also ClubCorp, 2019 WL 5704436, at *5 ("here Clubcorp is not suing to enforce the priority rules between Texas and another state").

Beyond French, Defendants cite no authority plausibly supporting a special jurisdictional rule when some of the property in dispute has already escheated to a different state.

### B.  Federal-State Balance

The fourth Grable factor provides an independent basis for remand.[1] There can be no federal jurisdiction over a state cause of action if providing a federal forum would disrupt the congressionally approved balance of federal and state judicial responsibilities. Grable, 545 U.S. at 314. Defendants here argue that federal priority is a "threshold" issue that must be resolved before adjudicating the merits of the escheatment obligation under state law. CB Opp'n at 6; USB Opp'n at 6. The defendants in Yee similarly argued that "plaintiffs must first establish 'jurisdiction to escheat' under federal common law before state law (California's UPL) even can be considered." Yee, 2019 WL 4866370, at *2. But, as the Yee court observed, this argument could improperly "sweep[] hundreds of state-based escheatment claims into federal court." Id. at 4. This danger is

---

[1] U.S. Bank argues that Relator waived his argument regarding the fourth Grable factor because he does not address it in his opening brief. USB Opp'n at 13. But on a motion to remand, it is the non-moving party who has the burden to establish that removal is proper. Luther, 533 F.3d at 1034. As U.S. Bank asserted federal jurisdiction under the Grable factors in its opposition, Relator was entitled to address the Grable factors in his reply. Any other rule would require the moving party on a motion to remand to successfully guess the defendant's justification for removal in its opening brief or risk waiver of important arguments. See Federal Sav. & Ins. Corp. v. Haralson, 813 F.2d 370, 373 n.3 (11th Cir. 1987) (declining to apply the waiver rule where the purposes of that rule would not be served).

especially acute because escheatment actions will often satisfy the second (actually disputed) and third (substantial) Grable factors. As Chase Bank argues, "[t]his is not a one-off fact-specific case" and it is likely that litigants in escheatment actions will "raise all manner of arguments about escheatment priority" in future litigation. CB Opp'n at 19. Many of these arguments will be both actually disputed and involve substantial questions regarding the interpretation of federal law and the balance of power between the states. But resolution of these issues in federal court would extend federal jurisdiction over a category of cases that involve a traditional exercise of state power and are traditionally heard in state court. See Delaware, 507 U.S. at 503; see also Yee, 2019 WL 4866370, at *3–4 ("No decision, however, has ever taken these holdings so far as to create removal jurisdiction for escheatment claims . . . [the defendant] has failed to show why our case should be the first"). While Defendants argue that there are policy reasons favoring the resolution of these questions in federal court, Defendants have not pointed to any evidence that Congress intended or anticipated this shift in the balance of judicial responsibilities.

### C. Summary

There is no federal question jurisdiction under Grable because (1) the federal question Defendants identify is not necessarily raised and (2) the extension of federal question jurisdiction to this case would disrupt the balance of federal and state judicial responsibilities by opening federal court to numerous state law escheatment claims.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motions to remand.

**IT IS SO ORDERED.**

Dated: March 31, 2021

CHARLES R. BREYER
United States District Judge